UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| DEREK SLOANE, | ) ) ) ) | |
| Petitioner, | ) ) | 09 Civ. 5923 (CS)(LMS) |
| - against - | ) ) ) | **REPORT AND** |
| DAVID A. ROCK, Superintendent, Great Meadow Correctional Facility, | ) ) ) | **RECOMMENDATION** |
| Respondent. | ) ) ) | |

TO:   THE HONORABLE CATHY SEIBEL,
      UNITED STATES DISTRICT JUDGE

Petitioner, Derek Sloane ("Petitioner"), *pro se*, files this petition for a Writ of Habeas Corpus (the "Petition") pursuant to 28 U.S.C. § 2254, challenging a judgment entered after a non-jury trial wherein Petitioner was found guilty under Westchester County Indictment Number #06-0658 of one count of Criminal Possession of Stolen Property in the Third Degree (N.Y. Penal Law § 165.50 and one count of Unauthorized Use of a Vehicle in the Second Degree (N.Y. Penal Law § 165.06).  Docket #1 (Petition, herein "Pet.") at 1; Petitioner's Ex. A1 (Indictment); Non-jury Verdict Transcript at 2-3.  On February 14, 2007, Petitioner was sentenced as a predicate felon in the County Court of Westchester County to an indeterminate term of imprisonment of three to six years on the Criminal Possession count and an indeterminate term of imprisonment of two to four years on the Unauthorized Use of a Vehicle Count, both terms to run concurrently with each other.  Sentencing Minutes (herein, "S") at 9-10.  Petitioner is currently incarcerated at the Attica Correctional Facility.  Docket #13, Notice of Change of Address.

1

In his Petition, filed on June 19, 2009, Petitioner seeks habeas relief on two grounds: (1) that Petitioner was denied the effective assistance of trial counsel; and (2) that Petitioner was denied the effective assistance of appellate counsel. Pet. at 4. I conclude, and I respectfully recommend that Your Honor should conclude, that the instant Petition should be dismissed.

I.      **BACKGROUND**

    A.      **The Crime**

On May 6, 2006, Officer Joseph Kraus (herein, "Kraus") of the Westchester County Police was patrolling the area around the Volunteers of America Homeless Shelter in Mount Pleasant, New York, when he observed Petitioner pull into the shelter's parking lot in a dark-colored pick up truck. Trial Transcript (herein, "T") at 25-26. Petitioner exited the truck, walked around to the passenger side of the vehicle, retrieved some items from that side of the truck, and walked into the shelter. T: 28. Kraus ran the plates of the truck and discovered that it was stolen. T: 30. Kraus called for back up and when other officers arrived, they entered the shelter. T: 32. The officers located Petitioner in the shelter and asked him if he owned the pick up truck parked in the back lot. T: 41. Petitioner said that he was a carpenter and the truck belonged to his boss who let him use the truck for two weeks. Id. When questioned, Petitioner gave a fake address for his alleged boss's place of business. T: 42. Petitioner was then arrested and the clothes that he was wearing earlier in the night were confiscated. T: 42-43. In the pocket of Petitioner's jeans was a parking ticket from two weeks earlier with the stolen truck's license plate number. T: 51-53. Petitioner was arrested and taken to police headquarters where he refused to be photographed or fingerprinted and told the booking sergeant, "Fuck you. You are going to have to take me the hard way."

**B.     Procedural History**

Petitioner was indicted on June 28, 2006, by Westchester County Indictment Number #06-0658, for one count of Criminal Possession of Stolen Property in the Third Degree (N.Y. Penal Law § 165.50 and one count of Unauthorized Use of a Vehicle in the Second Degree (N.Y. Penal Law § 165.06). Petitioner's Ex. A1 (Indictment). Petitioner's appointed counsel, Barry Warhit, filed an omnibus motion seeking: inspection of the grand jury minutes and dismissal of the indictment on the ground that the evidence was insufficient for an indictment; suppression of identification testimony and statements made by Plaintiff to law enforcement; and preclusion of Plaintiff's prior convictions. Resp't Ex. 3 (Omnibus Motion). By Decision and Order, the County Court ordered that a Wade, Sandoval, and Huntley hearing be held to determine these issues. Resp't Ex. 4 (Decision and Order).

On December 7, 2006, Petitioner appeared before Judge Susan Cacace of the Westchester County Court and knowingly and voluntarily waived his right to a jury trial. See generally Waiver of Trial Proceedings. At the non-jury trial, the People called several witnesses to testify, including Officer Kraus. See generally Trial Transcripts. Petitioner did not testify and did not call any witnesses on his behalf. T: 194-95. On December 14, 2006, Petitioner was found guilty on both counts. Non-jury Verdict Transcript at 2-3. Petitioner was sentenced on February 14, 2007, as a predicate felon to an indeterminate term of imprisonment of three to six years on the Criminal Possession count and an indeterminate term of imprisonment of two to four years on the Unauthorized Use of a Vehicle count, both terms to run concurrently with each other. S: 9-10.

On April 18, 2007, Petitioner filed a motion to proceed on appeal *in forma pauperis*, which was granted, and Petitioner was assigned John P. Savoca as appellate counsel. On

January 22, 2008, Savoca filed a motion to be relieved as counsel, citing differences of opinion and the inability to communicate with his client.  Resp't Ex. 6, Motion to Withdraw.  Before the Appellate Division, Second Department could act on his request, Savoca filed a subsequent motion to withdraw his motion to be relieved as counsel.  Resp't Ex. 6.  Through Savoca, Petitioner filed his direct appeal to the Supreme Court, Appellate Division, Second Department.  Resp't Ex. 8.  Petitioner raised three grounds for appeal: 1) ineffective assistance of trial counsel; 2) the verdict was against the weight of the evidence; and 3) Petitioner's sentence was excessive.  Id.  By Decision and Order dated February 24, 2009, the Appellate Division affirmed Petitioner's conviction.  People v. Sloane, 59 A.D.3d 745 (2d Dept. 2009).  In its decision, the Appellate Division stated that "[Petitioner's] claim of ineffective assistance of counsel is based on matter dehors the record and, therefore, cannot be reviewed on direct appeal."  Id.  Petitioner then sought leave to appeal to the New York State Court of Appeals, which was denied on May 26, 2009.  People v. Sloane, 12 N.Y.3d 859 (2009).  On June 19, 2009, Petitioner filed the instant Petition for a writ of habeas corpus and has no other appeals or petitions pending.  Pet. at 5.

**II.    DISCUSSION**

    **A.    Standard of Review**

"Habeas review is an extraordinary remedy."  Bousley v. United States, 523 U.S. 614, 621 (1998) (citing Reed v. Farley, 512 U.S. 339, 354 (1994)).  To be granted a writ of habeas corpus from a federal district court, a petitioner must fully and carefully comply with the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.  Under the AEDPA, all state remedies must be exhausted before a federal court may consider a state prisoner's petition for a writ of habeas corpus.  28 U.S.C. § 2254(b)(1)(A); see

also Picard v. Connor, 404 U.S. 270, 275 (1971).  In the interests of comity and expeditious federal review, "[s]tates should have the first opportunity to address and correct alleged violations of [a] state prisoner's federal rights."  See Coleman v. Thompson, 501 U.S. 722, 731 (1991); see also Daye v. Attorney General of the State of New York, 696 F.2d 186, 190-91 (2d Cir. 1982).  The exhaustion requirement of the federal habeas corpus statute is set forth in 28 U.S.C. § 2254(b), (c):

> (b) An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254(b), (c).

The Second Circuit has adopted a two-stage inquiry to determine whether the exhaustion doctrine has been satisfied.  See Klein v. Harris, 667 F.2d 274, 282 (1981).  First, the petitioner must have "fairly presented" his or her federal constitutional claim to the appropriate state courts.  Picard v. Connor, 404 U.S. at 275-76.  "A claim has been 'fairly presented' if the state courts are apprised of 'both the factual and the legal premises of the claim [the petitioner] asserts in federal court.' "  Jones v. Vacco, 126 F.3d 408, 413 (2d Cir. 1997) (quoting Daye, 696 F.2d at 191).  In other words, the claim must have been presented in a way that is "likely to alert the court to [its] federal nature."  Daye, 696 F.2d at 192.  The fair presentation requirement is satisfied if the state court brief contains phrases, such as "under the Due Process Clause" or "under the Constitution," that point to the petitioner's reliance on the United States Constitution as his or her legal basis for relief.  Klein, 667 F.2d at 282 (internal citations omitted).  A claim

5

may be considered "presented" even if the federal grounds were not explicitly asserted before the state courts if the petitioner, in asserting his or her claim before the state court, did one of the following: (1) relied on pertinent federal cases that employ constitutional analysis, (2) relied on pertinent state cases that apply constitutional analysis in like fact situations, (3) asserted his or her claim in terms so particular as to call to mind specific constitutionally-protected rights; or (4) alleged a fact pattern that falls within the mainstream of constitutional litigation. See Daye, 696 F.2d at 186; Irving v. Reid, 624 F. Supp. 787, 789 (S.D.N.Y. 1985).

Second, having fairly presented his or her federal constitutional claim to the appropriate state court and having been denied relief, the petitioner must appeal his or her conviction to the highest state court. Klein, 667 F.2d at 282. Where a petitioner fails to present his or her federal constitutional claim to the highest state court, the claim cannot be considered exhausted. Id. (citing Williams v. Greco, 442 F. Supp. 831, 833 (S.D.N.Y.1977)). There is, however, another avenue available for exhaustion purposes. A petitioner who has failed to exhaust state remedies by pursuing a direct appeal may satisfy the exhaustion requirement by utilizing available state methods for collaterally attacking his or her state conviction. See Klein, 667 F.2d at 282; see also Johnson v. Metz, 609 F.2d 1052, 1055-56 (2d Cir. 1979) (instructing habeas petitioner who did not fairly present claim in the course of his direct appeals in New York state courts to proceed by filing a motion to vacate judgment pursuant to N.Y. Crim. Proc. Law § 440.10). If collateral relief is denied, the petitioner may satisfy the exhaustion requirement by employing the state appellate procedures available for review of such denial. Id. at 282-83.

Generally, a state prisoner has one year from the date his or her conviction becomes final to file a habeas petition in federal court. 28 U.S.C. § 2244(d)(1). This limitations period ordinarily begins to run on "the date on which the judgment became final by the conclusion of

direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). The limitations period is tolled while ". . . a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending . . . ." 28 U.S.C. § 2244(d)(2). The limitations period may also be equitably tolled if a petitioner can show that "extraordinary circumstances prevented him [or her] from filing his [or her] petition on time." Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000). After a petitioner has met these threshold requirements, a federal district court generally may hear "an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court" only if the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

### B.   Petitioner's Claims

#### 1.   *Petitioner's claim of ineffective assistance of trial counsel is unexhausted and also is without merit.*

Petitioner claims that his trial attorney was ineffective for four reasons: 1) trial counsel advised Petitioner to waive a jury trial; 2) trial counsel failed to interview witnesses and investigate the case before going to trial; 3) trial counsel should have made a motion to be relieved as counsel based upon Petitioner's alleged complaint against trial counsel; and 4) trial counsel did not allow Petitioner to testify before the Grand Jury. Resp't Ex. 8 (Appellate Brief) at 6-17.[1] Respondent contends that Petitioner's claim is procedurally barred and, in the

---

[1] Petitioner does not raise these claims directly in his Petition. He merely makes the conclusory statement that both his trial and appellate counsel were ineffective. Pet. at 4. However, Petitioner does state in his Petition, "See (all) [sic] attached exhibits in support of this great Habeas corpus [sic]." To that end, Petitioner has attached a copy of his Appellate Brief. Pet. Ex. A-1-26. Therefore, this Court will accept this submission as Petitioner's argument in support of his claim of ineffective assistance of trial counsel, as that was the first ground raised

alternative, that it is without merit.  Resp't Mem. at 6-17.

In New York State, "[c]laims for ineffective assistance of counsel based on evidence outside the trial record should be raised in a collateral motion to vacate the judgment pursuant to New York Criminal Procedural Law §440.10."  Acosta v. Couture, No. 99 Civ. 9727 (LMM), 2003 WL 272052 at *6 (S.D.N.Y. Jan. 23, 2003); see also Oppenheimer v. Kelly, No. 97 Civ. 3035 (DC), 1999 WL 431159 at *2 (S.D.N.Y. June 24, 1999)("An ineffective assistance claim should only be permitted on direct appeal, however, when trial counsel's alleged incompetence is clearly manifest from the existing record").  A C.P.L. §440.10 motion to vacate permits "evidentiary exploration of matters both on and off the record, and [is] the preferred avenue for inadequate representation claims in New York."  Caballero v. Keane, 42 F.3d 738, 740 (2d Cir. 1994).  Therefore, if an ineffective assistance of counsel claim based on matters outside the record is only raised on direct appeal and not in a C.P.L. §440.10 motion, the "claim is deemed unexhausted [for purposes of habeas review] because it was not properly raised in the state court...."  Acosta, 2003 WL 272052 *6 (S.D.N.Y. 2003).

Petitioner's claims regarding the ineffectiveness of trial counsel address matters that are not evident from the record, specifically trial counsel's advice to Petitioner to waive a jury trial, advice to not testify in front of the Grand Jury, failure to fully investigate Petitioner's case, and failure to make a motion to be relieved as counsel after Petitioner allegedly filed a complaint against him.  Appellate Brief at 6-17.  In its Decision and Order, the Appellate Division specifically noted this fact, stating that "[Petitioner's] claim of ineffective assistance of counsel is based on matter dehors the record and, therefore, cannot be reviewed on direct appeal."

---

in his Appellate Brief.

Resp't Ex. 11.  Petitioner never filed a C.P.L. §440.10 motion with regard to this issue even after the Appellate Division's decision.  Thus, for purposes of habeas review, Petitioner's claim of ineffective assistance of trial counsel is unexhausted.  The fact that the issue is unexhausted does not, however, render the claim procedurally barred, as Respondent asserts, because Petitioner can return to the state courts and bring a C.P.L. §440.10 motion at any time.  However, under 28 U.S.C. §2254(b)(2), "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."  Therefore, this Court will consider the merits of Petitioner's claim of ineffective assistance of trial counsel.

   The Sixth Amendment right to counsel is the right to effective assistance of counsel.  McMann v. Richardson, 379 U.S. 759, 711 (1970).  "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial can no longer be relied upon as having produced a just result."  Strickland v. Washington, 466 U.S. 668, 686 (1994).  Where a petitioner claims ineffective assistance of counsel, the court's ultimate focus must be on "the fundamental fairness of the proceeding whose results are being challenged."  Id. at 696.  In order to prevail on a claim of ineffective assistance of counsel within the framework established by the Supreme Court in Strickland, a habeas petitioner must satisfy a two part test.  Id.  First, he or she must show that counsel's performance "fell below an objective standard of reasonableness."  Id. at 688.  Second, the petitioner must show that the deficient performance prejudiced the defense.  Id. at 692.  This requires showing that there is a "reasonable probability" that but for counsel's error, the outcome would have been different.  Id. at 686.

   In order to satisfy the first prong of the Strickland test, a petitioner must show that

counsel made errors "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687. The inquiry must be whether counsel's assistance "was reasonable considering all the circumstances," however "no particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." Id. at 688-689. In assessing the deficiency of counsel, there exists a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. In addition, a fair assessment requires that "every effort must be made to eliminate the distorting effects of hindsight," as there are "countless ways to provide effective assistance in any given case." Id. at 689. Strategic choices made after a thorough investigation of the law and facts are "virtually unchallengeable." Id. at 690.

Even if a petitioner shows that counsel made unreasonable errors, the petitioner "must show that [such errors] actually had an adverse effect on the defense." Id. at 693. It is not enough for defendant to show that an error had "some conceivable effect on the outcome of the proceeding." Id. Rather, the reviewing court must assess "whether, absent counsel's deficient performance, there is a reasonable probability that the outcome of the proceeding would have been different." Mayo v. Henderson, 13 F.3d. 528, 533 (2d Cir. 2004)(internal quotes and citation omitted). A reasonable probability is "a probability sufficient to undermine the confidence in the outcome." Id. (quoting Strickland, 466 U.S. at 694). "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffective claim." Strickland, 466 U.S. at 700.

Petitioner's first complaint regarding trial counsel's performance is that counsel advised Petitioner to proceed with a non-jury trial. Petitioner initially claimed, in his Appellate Brief,

that his waiver of a jury trial was not done in open court and approved by a judge.  App. Brief at 12-15.  This claim is clearly erroneous, as Respondent has provided transcripts of the hearing in which Petitioner waived his right to a jury trial. In fact, during that particular hearing, Petitioner's lawyer stated to the Court the following:

> Mr. Warhit:   There is no plea, but my client would like to exercise his right to go non-jury with the Court.  I'd like to go over the form with him...In open court, my client has gone over the waiver with me.  I have explained it to him.  I know the Court is going to have some questions, but in open court, he signed it, which is required.  I will witness it.

Waiver Proceedings at 2-3.  The Court then conducted the following colloquy:

> The Court:   Mr. Sloane, I'm showing you what your attorney was speaking about, the waiver of the jury trial, under this indictment 06-658.  Is that your signature there in the bottom right-hand corner?
>
> Defendant:   Yes, Your Honor.  Yes.
>
> The Court:   Did you have enough time to discuss this waiver with your lawyer before you signed it?
>
> Defendant:   We just discussed it, Your Honor.
>
> The Court:   Do you need any more time to discuss it?
>
> Defendant:   No.
>
> The Court:   Do you understand by your signing this waiver of a jury, you are waiving – that is, giving up – your right to have a jury trial and you are agreeing to have this case tried before myself? Do you understand?
>
> Defendant:   Yes.
>
> The Court:   That's what you want to do?
>
> Defendant:   Yes.

Waiver Proceedings at 3-4. The record shows that Petitioner discussed the decision to waive his right to a trial by jury with his attorney and stated in open court that he had had enough time to consider the matter. Id.

As noted previously, a fair assessment of an attorney's performance requires that "every effort must be made to eliminate the distorting effects of hindsight," as there are "countless ways to provide effective assistance in any given case." Strickland, 466 U.S. at 689. Strategic choices made after a thorough investigation of the law and facts are "virtually unchallengeable." Id. at 690. Petitioner admits in his Appellate Brief that the issue of whether or not to proceed with a jury trial required "actual discussions between [Petitioner] and counsel in connection with this specific issue." App. Brief at 6. Petitioner further states that his trial counsel advised him that he would not get a fair trial by jury in Westchester County. App. Brief at 7. Petitioner goes on to state that he was then forced to sign the waiver, but the record of the hearing on this matter shows otherwise. Trial counsel's advice to Petitioner regarding Petitioner's decision whether or not to proceed with a jury trial was a strategic choice in order to obtain the best possible verdict for his client. A petitioner is required to "overcome the 'presumption that, under the circumstances, that the challenged action might be considered sound trial strategy.' " Bell V. Cone, 535 U.S. 685, 698 (2002)(citing Strickland, 466 U.S. at 689). In the end, the decision was solely Petitioner's to make and he did so in open court. Strategic advice to a client does not rise to the level of ineffective assistance of counsel and, therefore, Petitioner's claim in this regard is without merit.

Petitioner's second complaint regarding his trial attorney is that counsel failed to interview a possible exculpatory witness. App. Brief at 10. Petitioner never identifies this witness nor does he provide any evidence that he even brought this witness to the attention of his

trial counsel. A petitioner must provide more than mere conclusory allegations in order to substantiate a claim of ineffective assistance of counsel. United States v. Romano, 516 F.2d 768, 771 (2d Cir.); see also Bartee v. United States, No. 09 Civ. 1499 (KTD), 2009 WL 4756434 at *2 (S.D.N.Y. Dec. 7, 2009). Specifically, a "petitioner's claim that counsel failed to investigate [] unidentified witnesses" does not "overcome the strong presumption that his [or her] counsel acted reasonably." Wise v. United States, No. 93 Civ. 2930 (DNE), 1995 WL 51113 at *4 (S.D.N.Y. Feb. 9, 1995). Therefore, without more, Petitioner's conclusory assertion that his trial counsel failed to interview an unidentified witness is not enough to support an ineffective assistance of counsel claim.

    Petitioner's third allegation is that counsel failed to make a motion to withdraw as counsel after Petitioner filed a complaint against him. App. Brief at 11-12. Again, Petitioner makes this assertion without any supporting evidence that Petitioner did, indeed, file a complaint against his trial attorney during his representation. Petitioner does submit a letter from the Westchester County Bar Association (WCBA) that they received Petitioner's complaint and that Petitioner would be allowed to supplement his complaint if he so chose. Pet. Ex. A-1-6. Petitioner attaches his letter supplementing his complaint, which is dated December 22, 2006, eight days after Petitioner was found guilty.[2] However, Petitioner never supplies the Court with his original complaint, dated to show that it was filed during trial counsel's representation of Petitioner. Petitioner also does not provide any evidence to show that, had he filed this alleged

---

[2]Respondent incorrectly states in his Memo of Law that this document was Petitioner's original complaint and makes the argument that Petitioner filed it after counsel's representation had ended, rendering Petitioner's claim meritless. This is incorrect as the letter from the WCBA, dated December 11, 2006, three days before Petitioner was found guilty, states that the WCBA had already received Petitioner's original complaint and were giving him the opportunity to supplement that complaint. Thus, Respondent's argument in this regard is incorrect.

complaint, his attorney knew of such a complaint during his representation of Petitioner.  Neither does Petitioner provide the Court with evidence that Petitioner made his complaint known to the Court during the proceedings.  Thus, as analyzed previously, conclusory allegations without any supporting documentation are not sufficient to maintain an ineffective assistance of counsel claim.  Romano, 516 F.2d at 771; see also Acosta v. United States, No. 10 Civ. 6945, 2010 WL 5297170 at *1 (S.D.N.Y. Dec. 20, 2010)("On a habeas review, the Court need not credit petitioner's conclusory allegations...").

      Petitioner also fails to show that trial counsel proceeded under an actual conflict of interest.  An actual conflict of interest exists only if defense counsel "actually represented conflicting interests" and the conflict "adversely affected the lawyer's performance." Id. at 350.  To demonstrate adverse effect, a defendant must demonstrate that an "actual lapse in representation" resulted from the conflict.  United States v. Stantini, 85 F.3d 9, 16 (2d Cir. 1996).  To prove a lapse in representation, a defendant must demonstrate that "some plausible alternative defense strategy might have been pursued" but was not, and that "the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests."  Winkler v. Keane, 7 F.3d 304, 309 (2d Cir. 1993).  The conflict must be real, and not some "attenuated hypothesis having little consequence to the adequacy of the representation."  United States v. Fahey, 769 F.2d 829, 835 (2d Cir. 1985).

      In Petitioner's case, trial counsel zealously advocated for his client, cross examining witnesses and making all of the proper motions on Petitioner's behalf.  Petitioner has not submitted any evidence that would show that trial counsel could have pursued an alternate strategy but did not due to a conflict of interest because of Petitioner's alleged complaint against him.  Therefore, since Petitioner has not provided any proof that trial counsel was burdened with

an actual conflict owing to Petitioner's alleged complaint, this claim is also meritless.

Furthermore, Petitioner cannot satisfy the second prong of the Strickland test which requires that a petitioner show that there is a reasonable probability that the outcome would have been different. Petitioner's appellate attorney conceded that, had trial counsel filed a motion to withdraw, such a motion "may not have been successful" at such a late stage in the proceedings. App. Brief at 11. Thus, because Petitioner does not provide any documentation regarding his alleged complaint and because he cannot show a reasonable probability that the outcome would have been different if his attorney had made a motion to withdraw, then Petitioner's third claim must be dismissed.

Petitioner's final allegation against his trial attorney is that counsel did not allow Petitioner to testify before the Grand Jury. App. Brief at 15-17. Petitioner was initially represented by Raymond Volper from the Legal Aid Society of Westchester. Docket #14, Letter attached to Reply. During this time, Petitioner was prepared to testify before the Grand Jury. Id. However, when the time came for Petitioner to be produced for the Grand Jury, the District Attorney was notified that Petitioner no longer wished to testify. Resp't Ex. 2, Disregard Production Notice. Petitioner claims that the letter from his initial attorney noticing that Petitioner wished to testify proves his "insistence to testify" but that he was "prevented" from doing so by his subsequent trial attorney, Mr. Warhit, the subject of Petitioner's ineffective assistance claim. App. Brief at 15-16.

A defendant has the right under New York law to testify during Grand Jury proceedings. N.Y.C.P.L. §190.50. New York courts have consistently held that counsel's failure to ensure that the defendant testifies before the grand jury does not amount to ineffective assistance of counsel. See People v. Wiggins, 89 N.Y.2d 872 (1996); People v. Dennis, 295 A.D.2d 755 (3d

15

Dept. 2002); People v. Turner, 187 A.D.2d 469 (2d Dept. 1992). Likewise, federal courts have held that an attorney's failure to produce his client for Grand Jury testimony does not amount to ineffective assistance of counsel. "[A]ny defect in the grand jury proceeding was cured by [Petitioner's] subsequent conviction...[so] it necessarily follows as a matter of law that [Petitioner] cannot establish that any errors made by his trial counsel with respect to the grand jury proceeding prejudiced him." Bingham v. Duncan, No. 01 Civ. 1371 (LTS)(GAY), 2003 WL 21360084 at *4 (S.D.N.Y. June 12, 2003). For the aforementioned reasons, Petitioner's claim of ineffective assistance of trial counsel should be dismissed.

### 2. *Petitioner's claim of ineffective assistance of appellate counsel is unexhausted and also is without merit.*

Petitioner asserts that his trial counsel was ineffective because appellate counsel was not an experienced appellate attorney who specialized only in appellate matters. Specifically, Petitioner states that appellate counsel was "nothing more but (sic) a fidelity national title insurance attorney. he (sic) shouldn't had represented [Petitioner] on this appeal (sic)." Pet. at 4. Respondent contends that Petitioner's claim against appellate counsel is unexhausted and, in the alternative, is without merit. Resp't Mem. at 18-20.

"The New York Court of Appeals has held that a common-law coram nobis proceeding brought in the proper appellate court is the only available and appropriate procedure and forum to review a claim of ineffective assistance of appellate counsel." Cowan v. Artuz, 96 F.Supp.2d 298, 304 (S.D.N.Y. 2000)(internal quotes and citation omitted). "There is no time limit for applying for a writ of error coram nobis...Accordingly, petitioner's claim for ineffective assistance of appellate counsel is not exhausted." Id. However, as discussed *supra*, "courts now are expressly permitted to deny applications for writs of habeas corpus on the merits,

16

notwithstanding a petitioner's failure to exhaust state remedies." Id.  Therefore, this Court will examine Petitioner's claim of ineffective assistance of appellate counsel.

A claim of ineffective assistance of appellate counsel demands the same Strickland analysis as that used for trial counsel.  See e.g. Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994); Claudio v. Scully, 982 F.2d 798, 803 (2d Cir.1992), cert. denied, 508 U.S. 912 (1993).  In other words, a petitioner must show that appellate counsel's performance "fell below an objective standard of reasonableness" and that there is a "reasonable probability" that but for counsel's error, the outcome would have been different.  Strickland, 466 U.S. at 686-88.

In reviewing allegations of ineffective assistance of appellate counsel, the Supreme Court has determined that indigent defendants do not have a "constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present these points."  Jones v. Barnes, 463 U.S. 745, 751 (1983); see also Mayo, 13 F.3d at 533 ("In attempting to demonstrate that appellate counsel's failure to raise a state claim constitutes deficient performance, it is not sufficient for the habeas petitioner to show merely that counsel omitted a nonfrivolous argument, for counsel does not have a duty to advance every nonfrivolous argument that could be made.")  The Supreme Court's decision in Jones was a reversal of the Second Circuit's holding that where an appellant requests that his or her attorney raise additional colorable points on appeal, "counsel must argue the additional points to the full extent of his [or her] professional ability."  Barnes v. Jones, 665 F.2d 427, 433 (2d Cir. 1981).  In reversing the Second Circuit, the Supreme Court pointed to "the superior ability of trained counsel in the 'examination into the record, research of the law, and marshalling [sic] of arguments on [the appellant's] behalf.' "  Jones, 463 U.S. at 751 (quoting Douglas v. California, 372 U.S. 353, 358 (1963)).  The Supreme Court highlighted

certain literature about experienced appellate advocates; such writings articulate a preference for "winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most, on a few key issues." Jones, 463 U.S. at 751-52. For instance, the Court quoted a passage from Appellate Practice in the United States, Stern, R., which argues that "[t]he effect of adding weak arguments will be to dilute the force of the stronger ones." Id. at 752. The Supreme Court articulated a similar conclusion: "[a] brief that raises every colorable issue runs the risk of burying good arguments...." Id. at 753.

Petitioner does not make the argument in his Petition that his appellate counsel failed to raise certain arguments on appeal. However, Petitioner seems to argue that his appellate counsel was ineffective because counsel was a title insurance attorney and not an attorney who specialized in appeals. Pet. at 4. The Supreme Court has held that a petitioner cannot justify a claim of ineffective assistance of counsel simply because counsel's "principal practice was in real estate...The character of a particular lawyer's experience may shed light in an evaluation of his actual performance, but it does not justify a presumption of ineffectiveness in the absence of such an evaluation." United States v. Cronic, 466 U.S. 648, 665 (1984). Merely claiming that counsel was inexperienced is not enough; a petitioner must show that counsel "omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." Mayo, 13 F.3d at 533.

In this instant case, Petitioner's appellate counsel submitted a twenty-seven page Appellate Brief that raised three claims: 1) Ineffective assistance of trial counsel, 2) That the verdict went against the weight of the evidence, and 3) That Petitioner's sentence was excessive. See generally App. Brief. Counsel fully examined each of these issues and supported them with citations to the law and to the evidence. Petitioner has not suggested to this Court any viable

18

issues that appellate counsel should have brought to the Appellate Court's attention but failed to do so. Therefore, Petitioner's contention that appellate counsel was ineffective merely because he did not specialize in appellate work is meritless and should be dismissed.

### III.   CONCLUSION

For the reasons stated above, I conclude, and respectfully recommend that Your Honor should conclude, that the instant habeas petition should be dismissed. As the petition presents no questions of substance for appellate review, I conclude, and respectfully recommend, that a certificate of probable cause should not issue. Rodriguez v. Scully, 905 F.2d 24 (2d Cir. 1990) (per curiam); Alexander v. Harris, 595 F.2d 87, 90-91 (2d Cir. 1979). I further conclude, and respectfully recommend, that the Court should certify pursuant to 28 U.S.C. §1915(a) that an appeal from this order would not be taken in good faith. See Coppedge v. United States, 369 U.S. 438 (1962).

### IV.   NOTICE

Pursuant to 28 U.S.C. § 636(b)(1), as amended, and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days, plus an additional three (3) days, pursuant to Fed. R. Civ. P. 6(d), or a total of seventeen (17) working days, see Fed. R. Civ. P. 6(a), from the date hereof, to file written objections to this Report and Recommendation. Such objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of The Honorable Cathy Seibel, at the United States District Court, Southern District of New York, United States Courthouse, 300 Quarropas Street, New York, New York 10601, and to the chambers of the undersigned at the same courthouse.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered.

Requests for extensions of time to file objections must be made to Judge Seibel.

Dated: April 5, 2011
White Plains, NY

Respectfully submitted,

LISA MARGARET SMITH
United States Magistrate Judge
Southern District of New York

A copy of the foregoing Report and Recommendation has been sent to the following:

The Honorable Cathy Seibel

Derek Sloane, #07-A-1140
Attica Correctional Facility
Box 149
Attica, New York 14011-0149

John Sergi, ADA
Westchester County District Attorney's Office
111 Dr. Martin Luther King Jr. Blvd
White Plains, New York 10601